IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY TINCHER, | )<br>) |
| Claimant, | ) No. 16 C 7305<br>) |
| v. | ) Jeffrey T. Gilbert<br>) Magistrate Judge |
| NANCY A. BERRYHILL,[1] Acting<br>Commissioner of Social Security, | )<br>)<br>) |
| Respondent. | ) |

## AMENDED MEMORANDUM OPINION AND ORDER

Claimant Anthony Tincher ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.]

Pursuant to Federal Rule of Civil Procedure 56, Claimant and the Commissioner filed cross-motions for summary judgment. [ECF No. 19; ECF No. 27.] For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 19] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 27] is denied.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Colvin is automatically substituted as the Defendant in this case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

On March 31, 2010, Claimant filed applications for a period of disability, DIB, and SSI, alleging a disability onset date of February 1, 2008 with a last insured date of December 31, 2009. (R. 169–79.) After an initial denial and a denial on reconsideration (R. 91, 94, 102), Claimant filed a request for an administrative hearing, (R. 108–10). After a hearing on April 16, 2012, at which Claimant appeared without representation, an Administrative Law Judge ("the first ALJ") denied Claimant's applications in a written decision issued on July 23, 2012. (R. 24–40, 44–48.) Claimant's subsequent request for review was denied by the Appeals Council. (R. 604.)

Claimant then filed a complaint in the United States District Court for the Northern District of Illinois on November 21, 2013 challenging the Commissioner's decision. (R. 548–56.) On July 14, 2015, another judge of this court reversed the Commissioner's decision and remanded the case for further administrative proceedings. *Tincher v. Colvin*, 2015 WL 4253632, at *8 (N.D. Ill. July 14, 2015). The court identified multiple bases for remand. The first ALJ did not consider what effect Claimant's severe mental impairments had on his ability to take medication regularly or to seek out free mental health care. *Id.* at *3–4. The first ALJ also did not build a logical bridge between the record and Claimant's residual functional capacity ("RFC"). *Id.* at *6. Specifically, the first ALJ did not adequately assess the medical opinions of Dr. David Voss, Dr. John Tomassetti, and Dr. Alan Jacobs. *Id.* at *6–7. Finally, the first ALJ improperly rejected Claimant's testimony that he needed to lie down for up to three hours every day based solely on the absence of objective evidence. *Id.* at *8.

On remand, a different ALJ ("the ALJ") held a hearing at which Claimant, this time represented by counsel, and a vocational expert ("VE") testified. (R. 507–47.) In an opinion

2

issued on April 26, 2016, the ALJ denied Claimant's applications for benefits based on a finding that Claimant was not disabled under the Act. (R. 480–81, 499). In her decision, the ALJ listed 13 directions from the district court's remand decision and then proceeded with the five-step sequential evaluation process required by Social Security Regulations. (R. 479–82.) At step one, the ALJ found Claimant had not engaged in substantial gainful activity since his alleged onset date. (R. 482.)[2] At step two, the ALJ found Claimant had the severe impairments of a generalized anxiety disorder, a panic disorder without agoraphobia, a bipolar disorder, and a substance abuse disorder (alcohol). (R. 483). At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (R. 488).

Prior to step four, the ALJ found Claimant had the RFC to perform a full range of work at all exertional levels, but imposed several non-exertional limitations. (R. 491.) The ALJ found Claimant could understand and remember short, simple instructions; complete simple, routine, repetitive tasks; maintain attention, concentration, and persistence necessary to carry out simple work tasks at a consistent pace; adapt to work situations and changes that occur in a usual workplace with reasonable support and structure; and make simple work-related decisions. (*Id.*) The ALJ also found Claimant's contact with coworkers and the public should be minimized, which she defined as permitting no public contact and only occasional interaction with coworkers and supervisors. (*Id.*) Finally, the ALJ found Claimant could independently sustain work routine without need for close supervision. (*Id.*) Based on this RFC, the ALJ found, at step four, that Claimant was unable to perform any past relevant work. (R. 497.) At step five, the

---

[2] The ALJ dismissed Claimant's DIB claim for benefits from the alleged onset date through the date last insured. (R. 482–83.) This decision is not at issue in this appeal.

3

ALJ considered whether Claimant could do any other work given her RFC, age, education, and work experience. (R. 498.) Based on these factors, the ALJ determined that there were jobs that existed in significant numbers in the national economy Claimant could perform, specifically cleaner II (DOT # 919.687-014), store laborer (DOT # 922.687-058), and hand packer (DOT # 920.587-018). (*Id.*)

Claimant did not file exceptions with the Appeals Council and the Appeals Council did not take jurisdiction, making the ALJ's decision the final decision of the Commissioner pursuant to 20 C.F.R. § 404.984. Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's

decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. DISCUSSION

Claimant argues that the ALJ made three errors. *See* [EFC No. 19.] First, Claimant asserts the ALJ improperly weighed the medical opinions of consultative examining psychologist Dr. Alan Jacobs, non-examining state agency psychological consultant Dr. John Tomassetti, and state agency psychologist Dr. David Voss. (*Id.* at 7–12.) Second, Claimant contends the ALJ erred in assessing his RFC. (*Id.* at 12–17.) Third, Claimant claims the ALJ did not appropriately evaluate the intensity, persistence, and limiting effects of his symptoms. (*Id.* at 17–20.) After reviewing the parties' briefs and the administrative record, the Court finds that the ALJ erred in weighing the medical opinions of Dr. Jacobs, Dr. Tomassetti, and Dr. Voss. Because this error requires remand on its own, the Court need not address Claimant's other arguments.

### 1. The ALJ Did Not Properly Weigh the Medical Opinions

Claimant makes two arguments regarding the ALJ's weighing of medical opinions. First, Claimant argues the ALJ did not explain why she apparently gave less weight to the opinion of examining psychologist Dr. Jacobs, which included a diagnosis of panic disorder without agoraphobia, than the opinion of the non-examining psychological consultant, Dr. Tomassetti, which did not include a diagnosis of a panic disorder. Second, Claimant argues the ALJ did not explain why she accorded Dr. Voss' opinion greater weight only to the extent that it was consistent with the ALJ's assessment of Claimant's RFC and rejected his conclusion that Claimant only could perform one- and two-step tasks. The Court treats each argument in turn.

#### A. The ALJ Erred in Weighing Dr. Jacobs' and Dr. Tomassetti's Opinions

First, Claimant argues the ALJ did not sufficiently articulate her reasons for giving greater weight to Dr. Tomassetti's opinion than to the opinion of the examining psychologist, Dr. Jacobs, regarding Claimant's panic attacks. [EFC No. 19 at 7–10.] As a result, Claimant argues, the ALJ did not truly account for Dr. Jacobs' diagnosis of panic disorder without agoraphobia in her RFC determination. (*Id.*) Claimant further argues the ALJ's error in this regard is not harmless because, at Claimant's administrative hearing, the VE testified that Claimant could not maintain employment if he caused other employees to be off-task to any extent due to his panic attacks. (*See* R. 544.)

Dr. Jacobs examined Claimant on August 14, 2010 for a little under an hour. (R. 401.) Concerning Claimant's mental status, Dr. Jacobs noted that Claimant manifested "dull facial characteristics" and was "mildly anxious." (R. 402.) Dr. Jacobs noted that Claimant "described symptoms of a possible bipolar disorder," yet "more significant seemed to be a panic disorder without agoraphobia." (*Id.*) Regarding Claimant's intellectual ability, Dr. Jacobs concluded

Claimant would "likely test within the borderline range of intellectual functioning." (R. 403.) In his "[f]indings and [r]ecommenda- tions," Dr. Jacobs diagnosed Claimant with "1) a history of alcohol dependence, 2) panic disorder without agoraphobia (while abstaining from alcohol), 3) bipolar disorder not otherwise specified, [and] 4) history of high blood pressure." (R. 403). He further found Claimant "would at this time appear to be best served through a payee." (*Id.*)

On April 20, 2011, Dr. Tomassetti conducted a psychiatric review of Claimant and completed a mental RFC assessment based on the results of Claimant's two prior psychological consultative examinations with Dr. Jacobs and Dr. Mark Conrad, the latter examination having taken place on April 7, 2011. (R. 441–61). Dr. Tomassetti did not examine Claimant himself. In his opinion, Dr. Tomassetti concluded Claimant "retains sufficient residual capacity to engage in routine unskilled activities in situations where close social contacts are minimal. (R. 460.) Dr. Tomassetti assessed Claimant to have an affective disorder of unspecified bipolar disorder, (R. 447), and a substance addiction disorder of alcohol dependence, (R. 452). Of most importance for this case, Dr. Tomassetti did not diagnosis Claimant with a panic disorder. *See* (R. 460). Dr. Tomassetti noted Dr. Jacobs' diagnosis of panic disorder in his summary of Claimant's consultative sources and acknowledged Claimant "reports panic attacks" in the additional information section. (R. 456, 460.) Dr. Tomassetti did not discuss these claims in relation to his functional capacity findings, and did not explain why he disagreed with Dr. Jacobs or concluded Claimant did not have a panic disorder. (*See id.*)

In the earlier remand opinion, the district court held the ALJ had improperly "adopted Dr. Tomassetti's [conflicting] conclusions without explaining why she set aside Dr. Jacobs' expert findings on panic disorder." *Tincher*, 2015 WL 4253632, at *7. The court stated that the ALJ "was required to weigh" Dr. Jacobs' opinion and to explain "why she did not agree with it." *Id.*

7

This was because, "[a]s an examining expert, Dr. Jacobs was entitled to greater weight than Dr. Tomassetti unless the ALJ stated cogent reasons for reaching a different conclusion." *Id.*; *see also* 20 C.F.R. § 404.1527(c)(1) (stating that ALJs "generally give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not"). While "an ALJ can reject an examining [source's] opinion only for reasons supported by substantial evidence in the record," the "contradictory opinion of a non-examining [source] does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). In this matter, if the ALJ "did not believe that Dr. Jacobs' diagnosis was reliable, then she was obligated to resolve the conflict between his report and Dr. Tomassetti's" before assigning "great weight to Dr. Tomassetti." *Tincher*, 2015 WL 4253632, at *7.

Unfortunately, on remand, the ALJ again did not properly address or assess Dr. Jacobs' opinion *vis-à-vis* Dr. Tomassetti's opinion. The ALJ did not clearly weigh either of them against or in light of the other. Regarding Dr. Tomassetti, the ALJ said she gave greater weight to his "conclusion" that Claimant "retained 'sufficient residual capacity to engage in routine unskilled activities in situations where close social contacts are minimal" to the extent it was "consistent with" her own RFC determination. (R. 497 (quoting R. 460).) The ALJ did not make clear whether she "afforded greater weight" to Dr. Tomassetti's full opinion or to its full extent. (*See* R. 497.) Regarding Dr. Jacobs, the ALJ again did not weigh his opinion at all. (*See* R. 493.) Although the ALJ included a panic disorder without agoraphobia among Claimant's "severe impairments" (R. 483), her RFC determination and discussion thereof do not suggest that the ALJ gave any weight or consideration to this diagnosis, (*see* R. 493–97). The RFC contains no limitations tied to panic disorder. To the contrary, the ALJ rejected Claimant's "allegations of . . . panic disorder without agoraphobia" because, she asserted, they were "not consistent with the

8

objective medical evidence." (R. 492.) Contrary to the Commissioner's assertion, then, the ALJ appears to have discredited Dr. Jacobs' diagnosis of panic disorder without agoraphobia to help support her assertion that "there is no basis for further limitation than that assessed" in her RFC determination. (R. 494; *see also* R. 493.) Other than the ALJ's brief discussion of Dr. Jacobs' diagnosis, her RFC discussion contains almost no mention of panic disorder or panic-related limitations. (*See* R. 493–97.) In sum, the analysis at the administrative level remains somewhat muddled because the ALJ muddled did not weigh Dr. Jacobs' opinion and weighed Dr. Tomassetti's opinion only upon two caveats. The Court, therefore, must conclude that, in effect, she again credited Dr. Tomassetti's lack or absence of diagnosis over Dr. Jacobs' diagnosis of panic disorder without an adequate explanation for doing so. (*See* R. 493.)

The ALJ suggested several confusing reasons for favoring Dr. Tomassetti's non-diagnosis over that of an examining source that, in this Court's view, does not save the case from remand again. Most clearly, she asserted that "the fact of the matter is that although the diagnosis was not listed in [Dr. Tomassetti's] evaluation, Dr. Tomassetti did note the panic disorder assessment of Dr. Jacobs and did note the claimant's and his mom's allegations concerning paranoia around others and panic attacks." (*Id.*) The Court takes this to mean that Dr. Tomassetti did not *ignore* Dr. Jacobs' diagnosis; that is, he "considered" it. (*Id.*) The ALJ further asserted that Dr. Tomassetti found the claims about panic disorder to be "only partially credible in light of claimant's objective results from his 2010 and 2011 psychological consultative examination and the dearth of treatment evidence." (*Id.*) This does not suffice to address the analytical problems identified in the first remand opinion.

First, the mere fact that Dr. Tomassetti noted Dr. Jacobs' and Claimant's reports of panic disorder simply does not explain *why* Dr. Tomassetti's opinion was entitled to greater weight

9

than Dr. Jacobs' opinion. *Tincher*, 2015 WL 4253632, at *7. Dr. Tomassetti's opinion does not discuss panic disorder beyond these references. It gives no indication of whether Dr. Tomassetti credited or discredited Dr. Jacobs' diagnosis or took it into consideration at all when assessing Claimant's mental functioning capacity. If, as it appears, Dr. Tomassetti rejected this diagnosis and did not include functional restrictions tied to panic disorder, he provided no discussion of or explanation for this decision, let alone cite evidence to support it. Just as Dr. Tomassetti did not explain why he apparently disregarded the reports of panic disorder, so did the ALJ fail to articulate a "good explanation" for why she gave greater weight to Dr. Tomassetti's consultative opinion over "the opinion of the agency's own examining" medical source. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). That Dr. Tomassetti noted Dr. Jacobs' diagnosis is not itself good reason to prefer his opinion over Dr. Jacobs'. Thus, the problem remains that, despite boilerplate to the contrary, the ALJ chose Dr. Tomassetti's non-discussion of panic disorder over Dr. Jacobs' diagnosis of panic disorder, without "provid[ing] a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor." *Id.* Thus, the Court must again remand so that the ALJ can give sufficient reasons for preferring a non-examining source to an examining source. *See Tincher*, 2015 WL 4253632, at *7.

Second, the ALJ's assertion that Dr. Tomassetti found the claims of Dr. Jacobs, Claimant, and Claimant's mother concerning paranoia around others and panic attacks "only partially credible" is not supported by substantial evidence. (R. 493.) While it is true that Dr. Tomassetti noted, in the "credibility issues" section of his assessment, that Claimant has "partial credibility," this section makes no mention of panic disorder, but rather only "problems with alcohol" and "bipolar disorder." (R. 460.) Nor is the impact of Claimant's "partial credibility" clear given that Dr. Tomassetti diagnosed Claimant with both bipolar disorder, (R. 447), and alcohol

10

dependence, (R. 452). Dr. Tomassetti simply provided no explanation for why he did not assess or discuss panic disorder. Even if the ALJ were to confirm that Dr. Tomassetti found the panic disorder diagnosis not credible, she must articulate *why* his apparent conclusions that Claimant did not suffer from a panic disorder or an anxiety-related disorder—which were supported neither by an examination of Claimant nor independent clinical findings— entitled to greater weight than Dr. Jacobs' findings. In sum, the ALJ's proffered reasons for favoring Dr. Tomassetti's opinion over Dr. Jacobs' concerning panic disorder are unsupported by such relevant evidence as a reasonable mind might accept as adequate to support her conclusion.

Finally, the ALJ also suggested that Dr. Jacobs' diagnosis of panic disorder without agoraphobia was "not consistent with the objective medical evidence." (R. 492.) Except for her above-described discussion of Dr. Tomassetti's non-diagnosis compared to Dr. Jacobs' diagnosis, however, the ALJ did not explain what evidence contradicts the evidence of panic disorder. To the contrary, the ALJ referebnced further evidence supporting Dr. Jacobs' diagnosis without discussing or weighing this evidence either. The ALJ noted that in 2013 Claimant reported symptoms of panic attacks that had been going on for five years with Dr. Godbolt, and was diagnosed by him with panic disorder without agoraphobia. (R. 495.) The ALJ recognized that Claimant reported continuing panic attacks to Dr. Godbolt, if only when it stormed, into 2014. (*Id.*) The ALJ also noted Claimant's treatment with Aunt Martha's Health Center, where he received psychiatric treatment starting in mid-2013. (*See* R. 978.) Although the ALJ noted that Aunt Martha's Health Center reported Claimant's panic attacks as being "'[s]table' with 'no clinical symptoms currently'" on May 8, 2015 (R. 496 (quoting R. 883), she did not address Aunt Martha's Health Center's underlying diagnoses. On July 29, 2013, Dr. Sherrie Godbolt of Aunt Martha's Health Clinic diagnosed Claimant with panic disorder without agoraphobia. (R.

11

980.) This diagnosis was reiterated in Claimant's psychiatric diagnostic evaluation dated August 8, 2014, but assessed not only "panic attacks" but also "agoraphobia." (R. 956–57.) Nor did the ALJ discuss how these diagnoses interacted with Dr. Jacobs' diagnosis of panic disorder.

In sum, even if the medical evidence demonstrated mixed findings on panic disorder, the ALJ did not correct the first ALJ's failure to explain why there was substantial evidence to discredit, rather than support, Dr. Jacobs' diagnosis of panic disorder without agoraphobia, which carries a presumption of greater weight under 20 C.F.R. § 404.1527(c)(1). Moreover, despite the ALJ's boilerplate assurance that her "assessment takes into account the claimant's . . . panic attacks," her discussion did not indicate how the RFC actually accounts for this diagnosis. (R. 496.) Thus, The ALJ did not "build an accurate and logical bridge from the evidence to [her] conclusion" regarding Dr. Jacobs' diagnosis of panic disorder and its effect on Claimant's RFC, such that her evaluation of these factors lacks substantial evidence. *Berger*, 516 F.3d at 544. Because the VE testified that workplace limitations relating to panic attacks, if found, could prevent Claimant from being able to maintain employment, remand is appropriate. (*See* R. 544).

### B. The ALJ Erred in Weighing Dr. Voss' Opinion that Claimant Can Complete Only One- and Two-Step Tasks

Claimant argues the ALJ erred in evaluating the medical opinion of state agency psychologist Dr. Voss. [EFC No. 19 at 10–12.] Specifically, Claimant argues that the ALJ improperly ascribed "greater weight" to Dr. Voss' opinion except the portion finding that Claimant's mental functional capacity was limited "to one to two step tasks." (R. 496.) After careful consideration, the Court agrees, finding remand appropriate for this reason as well.

Dr. Voss performed a psychiatric review of Claimant on September 15, 2010. (R. 409–22.) In his accompanying mental residual functional capacity assessment, (R. 423–25), Dr. Voss assessed Claimant as "[m]oderately limited" in the abilities "to carry out detailed instructions,"

"to work in coordination or proximity to others without being distracted by them," "to interact appropriately with the general public," and "to get along with coworkers or peer without distracting them or exhibiting behavioral extremes." (R. 423–24.) Based on these "summary conclusions," Dr. Voss found that Claimant had the ability to "understand and remember short instructions and complete simple one and two-step tasks," to "maintain the attention, concentration and persistence necessary to carry out simple work tasks at a consistent pace," and to "make simple work related-decisions." (R. 425.) Dr. Voss also opined that Claimant "has mild to moderate social skill deficit and problems relating with others" such that his "[c]ontact with co-worker and the general public should be minimized." (*Id.*)

The ALJ afforded "greater weight" to Dr. Voss' opinion, but only "to the extent consistent with [her own assessment of Claimant's] residual functional capacity." (R. 496.) Notably, the ALJ "did not limit the claimant to one to two step tasks" as Dr. Voss had opined. (R. 496; *see also* R. 425.) Claimant argues that the ALJ's decision to reject this finding is not supported by substantial evidence. The ALJ asserted two reasons for carving out this portion of Dr. Voss' opinion and not giving it *any* weight. The Court agrees that neither reason contributes substantial evidence to her conclusion.

First, the ALJ asserted that "'tasks' is a vague term" and that its meaning "depends on how the term is defined." (R. 496–97). This reason is insufficient because, to the contrary, "tasks" is not vague.[3] Rather, "tasks" functions as a term of art in the social security context. Several courts in the Northern District of Illinois "'have concluded that a limitation to one- to

---

[3] Claimant also argues that the ALJ should have contacted Dr. Voss to clarify the point, citing to *Barnett v. Barnhart*, 381 F.3d 364, 369 (7th Cir. 2004) which in turn cites to rescinded regulation SSR 96-5p. However, this argument is misplaced because those authorities hold only that, when "the basis of the opinion" of a "treating source" is unclear, the ALJ will attempt "to recontact the source for clarification of the reasons for the opinion. *See* SSR 96-5p. By contrast, Dr. Voss is not a treating source, and the ALJ's confusion did not concern the basis for his opinion regarding one- and two-step tasks, but rather the meaning of it.

13

two-step tasks is consistent with'" what the Department of Labor's *Dictionary of Occupational Titles* ("*DOT*") defines as "'Reasoning Development Level 1" because "'the language of the RFC limitation mirrors the language of Level 1.'" *Wyatt v. Colvin*, 2015 WL 3919058, at *8 (N.D. Ill. June 24, 2015) (quoting *Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 947 (N.D. Ind. 2012)); *see also Schlattman v. Colvin*, 2014 WL 185009, at *6–7 (N.D. Ill. Jan. 14, 2014) ("One- to two-step tasks function as a term of art in the Social Security context."); *Perry v. Colvin*, 945 F. Supp. 2d 949, 9654 N.D. Ill. 2013) (limitation of claimant to one- and two-step tasks "translates to reasoning level 1"). The *DOT* defines Reasoning Development Level 1 as the ability to "[a]pply common-sense understanding to carry out simple one- or two-step instructions." *DOT* at App'x C(III)). By contrast, the *DOT* defines Reasoning Development Level 2 as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." (*Id.*) The *DOT* further indicates what level of reasoning development each job entry requires.

Just as Dr. Voss' functional limitation concerning one- and two-step "tasks" mirrored the language of the *DOT*'s reasoning development level 1, his repeated use of the word "simple" reiterated this connection. Dr. Voss found that Claimant can "carry out *simple* work tasks," complete *simple* one and two-step tasks," and "make *simple* work-related decisions." (R. 425 (emphasis added).) Similarly, reasoning development level 1 involves the ability to "carry out *simple* one- or two-step instructions." *DOT* at App'x C(III) (emphasis added). By contrast, Dr. Voss' opinion did not employ level 2's "detailed but uninvolved" language. In sum, the ALJ's conclusion that Dr. Voss' opinion concerning one- and two-step tasks was vague is not supported by substantial evidence. Indeed, the ALJ implicitly conceded as much by raising her second reason, that "the objective medical evidence simply does not support such a restriction." (R.

14

497.) If the ALJ was not clear about how "tasks" was being "defined," then how could she tell whether Dr. Voss' opinion was consistent or inconsistent with the objective medical evidence? (*Id.*)

The ALJ's second reason for rejecting Dr. Voss' limitation to one- and two-step tasks—that "the objective medical evidence simply does not support such a restriction," (R. 497)—appears to be related to her earlier assertion that "the objective medical evidence of record . . . demonstrates no more than mild to moderate deficits in attention, concentration, and memory" (R. 496.) As to this assertion, however, the ALJ did not articulate why evidence of no more than mild to moderate deficits in attention, concentration, and memory is inconsistent with a limitation to one- and two-step tasks and level-one reasoning. The ALJ cited no evidence that mild to moderate deficits are incompatible with a limitation to one- and two-step tasks, nor that Claimant can complete greater than two-step tasks. (*See* R. 496.) To the contrary, Dr. Voss' conclusion that Claimant can "maintain the attention, concentration and persistence necessary to carry out *simple* work task" and "remember *short* instructions" with "*minimized*" social interaction, (R. 425)—which the ALJ recognized to be aligned with the conclusions of other doctors, (*see* R. 496)—seems consistent with his assessed limitation to *simple* one- and two-step tasks as opposed to level two's *detailed but uninvolved* tasks.

Similarly, the ALJ did not clarify why "the objective medical evidence simply does not support" a restriction to one- and two-step tasks. (R. 497.) The only evidence she cited supports this assertion. For example, she cites to state agency consultant Dr. Tomassetti's opinion that Claimant "retained 'sufficient residual capacity to engage in routine unskilled activities in situations where close social contacts are minimal.'" (R. 497 (citing R. 460).) But Dr. Tomassetti's opinion cannot bear this weight, for two reasons. First, as with Dr. Jacobs, the

15

ALJ did not explain why Dr. Tomassetti merited greater weight than Dr. Voss' opinion regarding one- and two-step tasks. Second, the ALJ did not explain why engaging in "routine unskilled activities" with "minimal" social contacts is inconsistent with being limited to one- and two-step tasks. To the contrary, Dr. Voss opined *both* that Claimant has "mild to moderate social skill deficits and problems relating with others" and can "maintain the attention, concentration and persistence necessary to carry out simple work task," *and* that Claimant should be limited to "simple one and two-step tasks." (R. 425.) Thus, in Dr. Voss' own expert opinion, Claimant's mild to moderate social and mental impairments were consistent with being limited to one- and two-step tasks. The ALJ did not explain otherwise. Nor did she explain why Dr. Tomassetti's conclusion regarding routine unskilled activities with minimal social contacts contradicted Dr. Voss' nuanced findings. Consequently, her conclusion that Claimant's ability to "sustain[] unskilled work with some level of limited social interaction" precludes a limitation to one- and two-step tasks is not supported by substantial evidence. (R. 497.)

In fact, the ALJ herself recognized that Dr. Tomassetti's assessment was "consistent with the evidence cited in regard to Dr. Voss' assessment," dismissing the differences in their opinions as "semantics." (R. 497.) As explained above, however, Dr. Voss' finding regarding one- and two-step tasks is vocationally significant, not mere semantics that may be dismissed without consequence. Moreover, if Dr. Tomassetti's opinion was not inconsistent with Dr. Voss' opinion after all, then it could not undermine Dr. Voss' finding that Claimant was limited to completing one- and two-step tasks. In other words, as a matter of logic, the ALJ cannot explain why a finding was inconsistent with the objective evidence by pointing to an opinion that was not inconsistent with that finding. Thus, the only evidence the ALJ cited here does not contribute any evidence against Dr. Voss' finding regarding one- and two-step limitations, let

16

alone such relevant evidence as a reasonable mind might accept as adequate to support her conclusion that Dr. Voss' finding was not entitled to greater weight.

In sum, the ALJ did not build a logical bridge from the evidence to her conclusion that Dr. Voss' assessment concerning one- and two-step tasks was not deserving of the same weight as the rest of his opinion. While the ALJ is not required to follow any particular recommendation about a claimant's ability to work, she must "build an accurate and logical bridge from the evidence to the conclusion." *Berger*, 516 F.3d at 544. Because the ALJ's rejection of Dr. Voss' nuanced finding lacked adequate discussion of the issues, her decision cannot stand. *See Villano*, 556 F.3d at 562. Moreover, the ALJ's rejection of Dr. Voss' assessed limitation was not harmless because all three jobs that she found Claimant could perform—cleaner II (DOT # 919.687-014), store laborer (DOT # 922.687-058), and hand packer (DOT # 920.587-018), (R. 498)—require level-two reasoning. The Court cannot say whether the ALJ could have found any jobs for Claimant if the VE had limited his inquiry to level-one reasoning jobs. Remand is therefore appropriate for these reasons as well.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 19] is granted, and the Commissioner's motion for summary judgment [ECF No. 27] is denied. The decision of the Commissioner is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 18, 2018